**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JAN 26 2000**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

JULIO GALINDO-MARTINEZ, aka
Jesus Galindo-Martinez,

Defendant-Appellant.

No. 99-4018
(D.C. No. 98-CR-88)
(D. Utah)

**ORDER AND JUDGMENT** *

Before **EBEL** , **KELLY** , and **BRISCOE** , Circuit Judges.

After examining the briefs and appellate record, this panel has determined

unanimously to grant the parties' request for a decision on the briefs without oral

argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore

ordered submitted without oral argument.

---

\* This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Defendant Julio Galindo-Martinez appeals his conviction and sentence for illegal re-entry of a deported alien in violation of 8 U.S.C. § 1326. Specifically, he asserts that the district court erred in denying his pretrial motion to suppress statements he made at a prior Immigration and Naturalization Service (INS) administrative interview. We have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742, and we affirm.

I.

Defendant was first deported on October 7, 1997, following a conviction in Utah for possession of a controlled substance with intent to distribute. On or about January 11, 1998, defendant was arrested by the Salt Lake City police on suspicion of possession of a controlled substance. The INS placed a detainer on defendant, and in February 1998, he was interviewed by INS agent Jeffrey Hoover at the Salt Lake City INS office. Agent Hoover conducted the interview in Spanish, defendant's native language. At the beginning of the interview, defendant was given a copy of a *Miranda* warning printed in both English and Spanish. The *Miranda* warning was read to defendant in Spanish from INS Form 214 which differs from a standard *Miranda* warning in that it advises that any statements made can be used in *either* a court of law or an immigration or

administrative proceeding. [1] *See* R. Vol. I, Plaintiff's exs. 1 and 2. The waiver also was read to defendant in Spanish. When queried, defendant indicated to Agent Hoover that he had no questions, that he understood the rights he was waiving, and that he wanted to waive those rights. He subsequently signed a waiver written in Spanish. *See id.*, ex. 1. During the interview, defendant made incriminating statements to Agent Hoover, including a confession that he had entered the United States illegally following prior deportation after conviction of an aggravated felony. Defendant's statements were noted on a "Record of Sworn Statement in Affidavit Form," which he signed. *See id.*, Defendant's ex. A.

Following the custodial interview, defendant was indicted for reentering the United States without obtaining the consent of the Attorney General to reapply for admission. *See* 8 U.S.C. § 1326(a). The government sought an enhancement of sentence pursuant to 8 U.S.C. §§ 1326(b)(2) and 1101(a)(43) due to defendant's prior conviction for an aggravated felony. Defendant filed a motion to suppress the statements given to the INS. Following a hearing, the magistrate judge recommended that defendant's motion be denied. On November 6, 1998, the district court adopted the magistrate judge's recommendation, and on January 20,

---

[1] In *Miranda v. Arizona*, 384 U.S. 436, 468-71 (1966), the Supreme Court imposed upon law enforcement personnel, the obligation to advise a suspect of the possible use of his statements against him in a criminal proceeding and of his right to have counsel present during interrogation.

1999, found defendant guilty and sentenced him to forty-six months' imprisonment. On appeal, defendant challenges as error the district court's denial of his motion to suppress.

## II.

"When reviewing a district court's denial of a motion to suppress, we consider the totality of the circumstances and view the evidence in a light most favorable to the government." *United States v. Long*, 176 F.3d 1304, 1307 (10th Cir.), *cert. denied* 120 S. Ct. 283 (1999). The district court's factual findings are reviewed for clear error. *See id.*

## A.

Initially, defendant alleges that his inculpatory statements to the INS were obtained through force, coercion, and deception. Defendant asserts that the fact that he had been held in a Salt Lake City jail for a period of time before the interview, and was transferred to the INS office for the interview in handcuffs is evidence of coercion. We do not agree.

"The ultimate question of whether a statement was voluntary is a question of law reviewed de novo." *United States v. Hernandez*, 93 F.3d 1493, 1501 (10th Cir. 1996). In *Moran v. Burbine*, 475 U.S. 412 (1986), the Supreme Court defined two "dimensions" of the *Miranda* inquiry as follows:

First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it. Only if the "totality of the circumstances surrounding the interrogation" reveals both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the *Miranda* rights have been waived.

*Id.* at 421 (quoting *Fare v. Michael C.*, 442 U.S. 707, 725 (1979)).

Here, the INS does not dispute that the interview was conducted in a custodial setting, thus triggering the need for a *Miranda* advisement. *See United States v. Solano-Godines*, 120 F.3d 957, 961 (9th Cir. 1997) ("The test to determine whether questioning is 'interrogation' within the meaning of *Miranda* is whether under all of the circumstances involved in a given case, the questions are reasonably likely to elicit an incriminating response from the suspect.") (further quotation omitted). The INS correctly points out, however, that defendant has offered no evidence of duress or coercion. Agent Hoover testified, and defendant does not refute, that defendant was not restrained with handcuffs during the interview, he was seated at Agent Hoover's desk, no weapons were visible, he was talkative and did not complain about the conditions or anything else, and no threats were made. The INS asserts that the interview was very short, lasting only a few minutes. Therefore, we conclude that defendant's claim of force and coercion in obtaining his statements is without merit.

-5-

B.

Next, defendant claims that he did not understand Agent Hoover when he was advised of his *Miranda* rights in Spanish. He contends that "his native language is not English and he only has a limited understanding of Spanish," and that "he was deceived by an INS Spanish speaker who advised him of complex concepts in a language he was not proficient in."[2] Appellant's Br. at 10. Here, it is clear that defendant is an Hispanic male, born and raised in Mexico. He is a Mexican citizen with family residing in Mexico. He indicated to Agent Hoover at the time of the *Miranda* advisement in Spanish that he understood the rights he was waiving.

Following his waiver, Agent Hoover asked defendant questions including his name, birth place, country of citizenship, when he entered the United States, whether he had been previously deported, and whether he was illegally in the country. Although it is undisputed that defendant answered these questions in a manner which tended to incriminate him, it is equally clear that he answered the questions in a manner which indicated that he fully understood the questions and the implications of his answers.

---

[2] Although defendant states to this court that he does not understand English and has only limited proficiency in Spanish, he does not advise this court as to what language he does communicate in. We also note that Agent Hoover testified that, during the interview, defendant answered a few of the questions in English.

The INS contends, and we agree, that defendant understood that he did not have to speak to Agent Hoover, and that if he elected to waive his right not to speak, any statements he made could be used against him in either an administrative proceeding or a court of law. Despite defendant's beliefs to the contrary, these are not complex concepts, and we conclude that defendant understood and voluntarily waived these rights. Therefore, under these facts, it is clear that defendant's allegation that he did not understand his rights and his waiver because of his deficient Spanish is unsupported, and his claim of involuntary waiver is not meritorious.

C.

Finally, defendant argues that the Record of Sworn Statement states that the statements contained therein are to be used in administrative proceedings exclusively. We do not agree with defendant's interpretation of the language in the form. The form states in pertinent part that defendant acknowledged that he was informed that "any statement [he made] may be used against [him] in any administrative proceeding." R. Vol. I, Defendant's ex. A. Our reading of this statement does not reveal an intent to limit the statements made therein *only* to administrative proceedings. When defendant was given the Miranda warning orally in Spanish, he was informed that any statements he made in the course of the interview could be used in *either* an administrative proceeding or a court of

-7-

law.  Defendant indicated his understanding of this advisement, asked no questions, and consented to the interview.  Therefore, defendant's attempt to construe the language of the form to denote an exclusive use of the statements fails.

III.

We conclude that defendant's waiver of his *Miranda* rights was voluntary and informed.  He was adequately advised, in his native language, of the nature of his rights and the fact that if he chose to waive those rights, his statements could be used against him in a criminal proceeding.  *See Moran*, 475 U.S. at 421.  Therefore, the district court's denial of defendant's motion to suppress was appropriate, and the judgment of the United States District Court for the District of Utah is AFFIRMED.

Entered for the Court

David M. Ebel
Circuit Judge